HAMILTON, MACKINDER & CO. *v.* CAMPBELL & RICKARBY et al.

The privilege of a commission merchant or consignee for advances, does not attach, until the proper-
ty on which the advances are predicated comes into the possession, actual or constructive, of the
party claiming the privilege.

The transfer of cotton on the black book of a cotton press, is a symbolical delivery.

By the usage of the cotton presses in New Orleans, the destination of a lot of cotton transferred on
its black book, cannot be changed without the consent of the transferree.

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J.
*Elmore & King*, for plaintiffs and appellants.  *Wolfe & Singleton*, for
defendants.

SPOFFORD, J.  This is a controversy between two commission houses, each
claiming a privilege to the exclusion of the other, upon seventy-three bales of
cotton.

The seventy-three bales are a part of the same lot on which the defendants
in this suit were decreed to have a privilege as against *Bradley, Wilson & Co.*,
the original vendors, in the case of *Campbell* v. *Penn*, reported in 7 Ann. 372,
where most of the facts material to the present suit, are detailed.

There was a difference of opinion among the members of the court, which
decided the former case, a majority holding that *Campbell & Rickarby* had a
privilege as against unpaid vendors, only upon such portion of the cotton trans-
ferred to them on the books of the press as had been weighed, and the dissent-
ing Judge being of opinion that they were entitled to a privilege upon the
whole list, whether weighed or not.

That question has no necessary bearing upon the decision of the present
case.  *Bradley, Wilson & Co.* are no longer parties to the suit, and it is admit-
ted that the seventy-three bales in dispute passed the scales.

Both of the present parties had made large advances to one *Simpson*, a cot-
ton speculator who failed and absconded on the evening of the 7th June, 1851.

The privilege of a commission merchant or consignee for advances, does not
attach until the property on which the advances are predicated, comes into the
possession, actual or constructive, of the party claiming the privilege.

But the plaintiffs say, that they alone are entitled to a privilege here, because
this cotton was to have been shipped on the Sallie Fearn, one of the vessels
which was to carry the cotton on which they advanced, whereas the defendants

68

HAMILTON ET AL. only advanced on cotton to be shipped by the Epaminondas. The fact is not
       *v.*
CAMPBELL ET AL. entirely clear, nor do we deem it material under the circumstances of this case.
The last advance made by *Campbell & Rickarby*, is established by the follow-
ing receipt:

"Received, New Orleans, June 7th, 1851, from Messrs. *Campbell & Rickar-
by*, ten thousand dollars on account.    (Signed,)     JNO. C. SIMPSON."

Here nothing is said about the contemplated mode of shipment, and the cot-
ton in question was at that moment in the Union Cotton Press, and standing
on the black book in the name of *Campbell & Rickarby*. It is true that the
words "ship Sallie Fearn" preceded the shipping mark [Q. S.] of the 100
bales, (which included these 73,) or were placed there on the evening of the
7th of June. But on the same day, the following order was given by the clerk
of *Keene*, the broker and the general agent of *Simpson* in these transactions:

"Union Press will please compress and send on board ship Sallie Fearn, the
undermentioned cotton, for account of *Campbell, Rickarby & Co.*, [Q. S.]
1/100, and oblige          N. B. KEENE, per H. PANIPARE.

"New Orleans, June 7th, 1851."

Upon this order, appears the following memorandum: "We wish the Union
Press to send this cotton on board at once. (Signed,) CAMPBELL & RICKARBY."

They signed this memorandum on the 8th of June, but there is no evidence
to impeach their good faith or to show that they were aware that any body
except *Bradley, Wilson & Co.* had a claim adverse to theirs on these 100 bales.
Under the decision in *Campbell* v. *Penn*, they gave up to the vendors, *Bradley,
Wilson & Co.* twenty-seven of these bales, they not having passed the scales
at the time *Bradley, Wilson & Co.* sequestered, which narrows this controver-
sy with *Hamilton, Mackinder & Co.* down to seventy-three bales.

The plaintiffs do not pretend that they ever had actual possession of this
cotton. We understand them to admit the possession of the defendants, but
they urge that this possession was acquired through the error and mistake of
the clerk of the broker *Keene*, and that it must therefore enure to their benefit;
in other words, that the actual possession of the defendants, acquired by mis-
take, must be held in law to be the constructive possession of the plaintiffs.

Supposing the facts to be as alleged, this conclusion could not be admitted
for a moment, as between two innocent parties claiming privileges of the same
grade upon the same thing.

But there was as much of design as of mistake in this transaction.

*Bradley, Wilson & Co.* really sold this cotton, with a large lot besides, to
*Simpson.* But at the suggestion of the broker, *Keene*, and to protect them-
selves as the price was not paid, they gave their order on the press where it
was stored in favor of *Keene*, not of *Simpson*. *Keene* then had the os-
tensible control of the property, but was really subject to the orders of
*Simpson*. *Giffney*, a ship broker, who seems to have been the active
friend of *Campbell & Rickarby*, and aware that they had made large ad-
vances to *Simpson*, told *Keene* on the fifth or sixth of June, that they
wished all the cotton on which they were advancing, transferred to
them. *Keene* apprised *Simpson* of their wishes, and was ordered by
him to transfer the *whole lot* to them on the black book of the Union Press.
This he did on the 6th of June, under his own hand, entering the whole list,
without distinction, as sold directly "from *Bradley, Wilson & Co.* to *Campbell,
Rickarby & Co.*" This was a symbolical delivery of the cotton to them. Af-

terwards, on the evening of the same day, *Simpson*, aware of his approaching HAMILTON ET AL. discomfiture, and anxious to lull the suspicions of another creditor, even at the CAMPBELL ET AL. *v.* expense of truth and fair dealing, ordered one hundred bales of the lot which had thus passed from his control, to be classed out by *Keene* and sent to the Sallie Fearn for *Hamilton, Mackinder & Co.* All that *Keene* did under this order, was to have the one hundred bales classed and marked with the shipping mark [Q. S.], and to tell *Hamilton, Mackinder & Co.* that he was classing it out for them, all of which was done on the next day, the 7th of June. He did not notify *Campbell & Rickarby*. He did not even instruct his clerk of this new intention, as appears from the facts already mentioned, that the clerk gave an order on the 7th instant, in *Keene's* name, for the cotton in this shipping mark to be compressed and sent on board the Sallie Fearn, for account of *Campbell & Rickarby*. *Keene* testifies, that he discovered that his clerk had made a mistake in the entry as to this one hundred bales, but did not wish to make any alteration in the entries on account of the difficulties that had already arisen.

By the usage of cotton presses in this city, the destination of a lot of cotton transferred on its black book, cannot be changed without the consent of the transferree.

It is not shown that either *Simpson* or *Keene* were laboring under any mistake as to the one hundred bales, when the former gave the order to transfer the whole lot, and the latter executed it. The lien which attached in favor of *Campbell & Rickarby*, the instant that transfer was made, could not be displaced without their assent, by a subsequent change of mind on the part of *Simpson*, as to the proper destination of this portion of the cotton.

If the rights of the parties were more nearly balanced than they are, still there should be judgment for the defendants, under the rule " *melior est conditio possidentis*."

It is therefore ordered and decreed, that the judgment complained of be affirmed, with costs.